May it please the Court, I am Jessica Feynman with the Office of the State Appellate Defender and I represent Ms. Ashley Roosevelt. If this Court indicates that it does not have jurisdiction to address the merits of Ms. Roosevelt's appeal, she intends to file a motion for supervisory order pursuant to Illinois Supreme Court Rule 383. Why? Why would we file the motion for supervisory order, Your Honor? Because if this Court does not have jurisdiction, then we believe that we would be able to file that motion and that the Illinois Supreme Court could thus give this Court authority to hear the merits of Ms. Roosevelt's appeal. How, under what basis could, if there's no subject matter jurisdiction, how could a Supreme Court give it to us? It is my understanding, Your Honor, that a motion for supervisory order in this situation that the Supreme Court could do so, I could look into that. Do you have a case that you could sign on that? I do not, Your Honor. Because the question I had is the lawyer who was representing Ashley Roosevelt in the post-trial motions, was that the same lawyer throughout? It is my understanding, yes, it was. So the lawyer who was standing there on the first post-trial motion when it was denied knew at the second time that it had already been denied. That's correct. But that lawyer stood silent. Yes, Your Honor, he did. So why wouldn't that be a post-conviction petition? Your Honor, the rules of forfeiture and waiver do not apply to jurisdictional issues. And so that the attorney, the trial attorney, did not have a duty to bring that to the Court's attention. We wish that he would have, but he didn't in this case. He had no duty? What do you mean he had no duty? It's my understanding that there was no – that because the rules of forfeiture and waiver do not apply, that just the – Okay. You just lost me. The rules of forfeiture and waiver do not apply to what? To jurisdictional issues. So because those rules of forfeiture and waiver did not apply, the trial counsel's failure to notify the Court that it had already ruled on that motion does not render Ms. Roosevelt's appeal – this Court not having jurisdiction over her appeal. No, that's not what I'm asking. I'm asking, the lawyer standing there at the first post-trial motion knew that it was a post-trial motion. It was his motion, or her motion. And then at the second post-trial motion, he stood – or she stood silent, knowing that there was no jurisdiction in the trial court. Right? Yes. And do you believe that deprived Ms. Roosevelt of her constitutional right? Yes, Your Honor, we do believe that it deprived Ms. Roosevelt of her constitutional right to appeal because it was Ms. Roosevelt's intent to appeal the case all along, as evidenced by the trial courts preserving the issue of the motion to suppress in the post-judgment motion. So my point is, if he stood silent and denied her that right to appeal, do you think that that's ineffective assistance of counsel? I do not believe that it is ineffective assistance of counsel, because at this point, given that the waiver rules do not apply to that, I do believe that he should have said something. It's a very situation where, obviously, it's a position that no lawyer would want to be in, that he must have misremembered that the court had already heard the motion. I'm not sure, Your Honor. I was not there. But we do intend to file a motion for supervisory order asking that the Illinois Supreme Court grant this court authority to hear the merits of Ms. Roosevelt's appeal. And for those reasons, Ms. Roosevelt would like to proceed to argument on her Fourth Amendment claims. The trial court erred when it denied Ms. Roosevelt's motion to suppress evidence because the mission of the stop was complete, and there was no reasonable suspicion to justify a prolonged intrusion. The State does not contest that the stop was complete and only argues that there was reasonable suspicion to prolong the stop. However, Sergeant Burnley failed to provide specific and articulable facts to support the prolonged detention. He instead relied on mere hunches and unparticularized suspicions, which were insufficient to justify delaying the stop to perform the dog sniff. When the purpose of the stop is complete and no further suspicion is aroused, the stop must end. A traffic stop may become an investigative detention only if the officer discovers specific and articulable facts which give rise to reasonable suspicion that the defendant has committed or is about to commit a crime. Reasonable suspicion must be objectively reasonable and cannot be based upon inarticulate hunches or unparticularized suspicions. In this case, Sergeant Burnley was standing outside the truck, obviously not in the truck that was stopped. He was standing to the rear of that truck outside the rear passenger door. After Deputy Sager stopped Ms. Walkenbach and collected her license and insurance, he went back to his car, ran her information through the lead system, and upon his re-approach to the driver's side door, Sergeant Burnley informed him that he saw the driver conceal or hide something when she reached back with her left hand between the driver's seat and the driver's door. However, Sergeant Burnley also admitted that he could not see the driver's hands and he also did not see that anything was in her hands and he could not see whether there was any contraband. When a movement such as this may be consistent with a number of innocent scenarios, the officer's observations are likely a mere hunch. For example, the second district held in People v. Brown that when a driver reached up towards the dashboard and then down to the floor on the passenger side, there was insufficient reasonable suspicion to justify the prolonged detention of the vehicle. Furtive movements coupled with an odor of cannabis can be evidence of reasonable suspicion, but we don't have that case here. And also, the state cited the People v. Moore. However, in that case, the appellate court specifically noted that there were other facts that gave rise to reasonable suspicion, such as the defendant appeared nervous and he was driving northbound in a southbound lane. Because the mission of the stop was complete and there was no reasonable suspicion to justify prolonging the stop, the evidence should have been suppressed. Let me ask you this. Let's suppose, so I understand that the dog jumped up on the hood of the car and started scratching the car, but your client was a passenger. Yes. Right? Correct. And nobody seems to talk about in their briefs the fact that, number one, your client was a passenger. She was put outside of the car after the dog sniffed. Right? Correct. And nobody talks about what her perception was as to whether or not she was free to leave, etc. But nobody talks about, and I can't figure it out, maybe you can help me, how did they search her purse to find the meth? The meth was in her purse. That's correct. How did that happen? So after the dog alerted to the drugs inside the vehicle and then all of the occupants were escorted out of the vehicle, it was at that point that my client needed her diabetic medication, and so she gave her purse to the officer for him to get that diabetic medication, and some of the controlled substances were found in the containers that were holding her diabetic medication. So she offered her purse to the officer? She did not offer it. The officer took it from her to get her diabetic medication. Well, that's what I don't understand. So she says, I need my medication. She's outside the car. Regardless of how she got there, she's got a purse, and she says, I need my diabetic medication. So he takes the purse from her to get her the diabetic medication? That's my understanding, yes. And doesn't he have to search that to do that? He would. But at that point, the detention was unjustly prolonged because the mission of the stop had been completed and there was no reasonable suspicion to further prolong the detention. So any evidence that was uncovered after the mission of the stop was completed without sufficient reasonable suspicion to prolong the stop should have been excluded. Wasn't the fact that one officer testified to have witnessed the driver make that suspicious movement under the seat a safety concern for the officers involved and the occupants of the vehicle? And doesn't that justify the search? No, Your Honor, it does not justify the search because while a threat of movement may be consistent in this case with a number of innocent scenarios, the testimony in the record shows that the driver's infant daughter was in the back seat. So it's possible that during the stop, the reason that the driver was allegedly passing something to the back seat was because perhaps the child needed a pacifier or food or a bottle or something like that. It's a possible innocent scenario. And when it is just when that threat of movement could be a number of innocent scenarios, that's not sufficient and sparks specific articulable facts that give rise to that reasonable suspicion. That simple fact alone was not enough. Had the officer also observed contraband in the driver's hand or had he observed the driver or even any of its passengers acting nervously or such as the case in the Second District case, People v. Brown, excuse me, not People v. Brown, but in the case cited by the state, People v. Moore, where the driver was driving northbound in a southbound lane, the court found that all of those facts taken together justify reasonable suspicion and the extended intrusion. In this case, we only have the threat of movement. We only have the alleged threat of movement that can be attributed to a number of innocent scenarios. I'm concerned, though, that your client voluntarily gives this officer her purse for a totally different reason. Judge, Your Honor, I disagree that my client voluntarily gave the purse. It's my understanding in the record that the officer would not let Ms. Roosevelt get her diabetic medication out of her purse herself. So he had seized the purse from her to get that medication. And for those reasons, because the mission of the stop was completed and there was no reasonable suspicion to justify the prolonging the stop, the evidence should have been suppressed. Did she have her purse with her outside of the vehicle or was the purse left inside the vehicle during the drug search? And that's when she asked for the drug, the dog, and that's when she asked for the medication and he went and retrieved the purse out of the vehicle. All the occupants were in the car during the dog sniff. It was after the dog sniff that they exited. It's my understanding and my recollection that the purse was inside the vehicle when she was escorted out and that the officer had to go retrieve the purse for her. And if the purse was located inside of the vehicle that the dog had alerted for drugs to, that doesn't offer the officer the opportunity before he hands it to a potential defendant to look through the purse or to give her what she's asking for specifically rather than handing her the entire purse? If you could rephrase the question, Your Honor. In other words, the purse was inside the car when the dog alerts to drugs. She then wants something out of the purse. Is he required to give her the purse or is he allowed to retrieve the item from the purse that she's asking for? At that point in time, she was not detained or under arrest, so I think that he could have given her the purse for her to get the diabetic medicine out of the purse. Because the mission of the stop was complete and there was no reasonable suspicion, we would ask that the evidence should have been suppressed by the trial court. Alternatively, the trial counsel was ineffective for failing to move to suppress the evidence on the grounds that the stop was not justified at its inception. To succeed on the ineffective assistance of counsel claim, Ms. Roosevelt must both show that her attorney's performance was deficient and that the decision prejudiced Ms. Roosevelt. The attorney's decision not to challenge the stop based on its inception was deficient because it was not trial strategy. Trial counsel's strategy was to move to suppress the evidence, and because he failed to include a meritorious ground of suppression, that was a deficient conduct because the facts reduced at the motion to suppress hearing do not objectively show that this stop was reasonable under the circumstances because when the driver, when the deputy saver approached the driver, she was wearing her seatbelt. He also didn't notice, although he followed her, that she, he didn't, although he test, he noticed, he did not notice, excuse me, that she put her seatbelt on while he was following her. He was also approximately 100 yards away from her. So for all of those reasons, the officer's observation that Ms. Roosevelt was not wearing her seatbelt was objectively unreasonable, and counsel's performance was deficient for not challenging that on the basis of stop. For all those reasons, Ms. Roosevelt respectfully requests this court reverse her conviction. Thank you, Your Honor. Thank you, Your Honors. My name is Allison Page Brooks. I appear on behalf of the people. May it please the Court. With respect to jurisdiction, the judgment was on July 7th, 2015, and the defendant's notice of appeal was over five months later, which is more than the 30 days. It would have been within the six-month safety valve of Rule 606C, of which the defendant does rely. However, there would have to be, according to plain language of that rule, a motion filed in the reviewing court along with an affidavit. And if none of that was done, then this Court cannot excuse the defendant's lack of compliance with the rules governing appeals. Only the Supreme Court and their supervisory authority may do so. And so because the notice of appeal was not timely, what the defendant is relying on is tolling. Now, the rule under tolling under 606B only extends 30 days past the denial of the post-judgment motion. So she's right that the Supreme Court could give us authority? Yes. Under supervisory order? Yes, under two ways. And this is something the defendant could have done and probably already should have done. When this Court dismissed the appeal in General No. 5-150399, this Court had 21 days, or the defendant would have had 21 days, to make a motion to reinstate the appeal. After 21 days, the defense lawyer was, I mean, he just sounds like he was clueless. I mean, he didn't even say anything when the judge reset it for a post-trial hearing. Well, yes, I understand. He should have probably said something. And the appellate counsel might not have gotten the record, though. So when the appellate counsel gets this dismissed by trial court order because he strikes a notice of appeal, I understand the appellate counsel probably could not have known to file a motion to reinstate within the 21 days. Right. Had the record been filed, it would have been different, but it wasn't filed by then. Right. But the point is this Court loses jurisdiction after 21 days to reinstate that appeal. Right. So the defendant wants this Court to sort of transfer the briefs to 5-150399. That's not possible. That case has been dismissed by this Court's order, and 21 days passed after that, and only the supervisory order of authority of the Supreme Court of Illinois could permit this Court to reinstate that appeal. And what rule is that? I'm not sure if that's – and I don't know exactly. That's okay. It's around 383 or something. So if we dismiss this for lack of jurisdiction and the defendant then applies to the Supreme Court, it would come back to us on the merits, right? Yes. This Court would get jurisdiction by virtue of the supervisory order which would direct this Court, if that order issued, to direct this Court to address the merits or reach the merits, and it would vest this Court with jurisdiction. But the rules, the compliance with the rules is required at this point. Without supervisory order, the defendant is required to have complied with the Rule 606 and has not. And I was getting at the tolling issue. The defendant does rely on tolling, but it said tolling only goes to 30 days past the denial of the post-judgment motion, and it's the State's interpretation of that rule that a sort of a do-over of the denial of that post-judgment motion is not constituted by the rules, that the trial court cannot just simply re-enter the same denial of an earlier post-judgment motion which is already denied in order to restart the time for appeal. That would be something the judge does not have the authority to do. Let me ask you a question. Have you ever seen anything like this? No, but I understand that this is sort of a problem that puts the defendant in a difficult spot. I understand that it doesn't really seem fair for the defendant to lose their constitutional right to appeal or direct appeal on a sort of jurisdictional issue, particularly when the defendant personally might not be at fault. It could be the defendant's lack of effective assistance of counsel. However, her remedy would be, other than seeking supervisory authority, is to file a post-conviction petition. However, if she got a 24-month probation, she's no longer on probation. I'm not sure if that's true, but if she is no longer on probation, she would have no standing to file a post-conviction petition simply to get the conviction off the record. If she's on probation, they only have the motion for supervisory order. If she loses standing because she has served her sentence, then the only way she could get her appeal is through supervisory order. So the state cited a case that I worked on in the Fourth District, I think it was Johnson, where the trial court, within the 30 days after denying a post-judgment motion, vacated that denial. And that case was because he learned of a co-defendant's disposition and wanted to change the result of that trial in the Johnson case. And in that case, they held that the court did have jurisdiction to vacate the denial, of the post-judgment motion within the 30 days. However, after 30 days, the trial court lost jurisdiction. And here, the order that the trial court denied the post-judgment motion was on August 28th, 2015. So once 30 days runs, the trial court no longer has jurisdiction to vacate that denial. And so when the notice of appeal was struck, that was, I think, on October 9th, which is over 30 days after August 28th. So what you're telling us is the trial judge had no jurisdiction to strike that notice of appeal. That's the defense position, and I think that's correct. But this court does have jurisdiction to dismiss the appeal that was docketed as 515-0399. So this court made a mistake then. Well, only in the sense that it relied on something that the trial court did wrong. Right. The trial court sent a notice to this court saying it's premature. I don't know what exactly it said, but it's premature. And then so we, as an appellate court, we're not going to examine the trial court. So we say, okay, we dismiss it. But it was wrong. Well, in that sense, in other words, this court did follow the trial court striking the notice of appeal. So this court wouldn't have had jurisdiction to proceed because the trial court struck the notice of appeal. The notice of appeal is jurisdictional. But the trial judge didn't have jurisdiction to even send us the letter. Right. I understand. No, he had jurisdiction. Right. And there was no investment either. So all these safety valves have either not been taken advantage of yet. And so it's unfortunate that the defendant would have to have her appeal dismissed. But this court would have to comply with those rules and do so. And then if this court recommended, for example, the Supreme Court enter supervisory order or something, that could be within authority. But unfortunately, it would have to be dismissed. With respect to the Arkansas merits, the issue is reasonable suspicion has to be. Okay. This case needs to leave a little bit early this afternoon. These are all, as you know, being recorded. And she will participate. She'll listen to the rest of the arguments on the recording. Okay. Participate in our discussion of the case, just so that you all know that. Thank you for the explanation. The issue of reasonable suspicion requires specific articulable facts. And the statement lied on the Moore case. And the defendant is correct. Moore has a lot more reasonable suspicion than this case. This case is much closer. However, the statement lied on the section of Moore where it said, explanations of furtive movements have been found sufficient to warrant furtive detention. Citing United States v. Friar, and this is quoted in Moore, it said, the officer observed furtive movements in this Friar case between the driver and passenger. The court held these are the kind of specific articulable facts that warrant a search. So that's the Terry standard. And so furtive movement is specific articulable facts. It's not a hunch. It's a specific articulable fact. And even if it's consistent with innocent explanation, there's no case that I've seen that says that even if some behavior is suspicious, but it might be consistent with something innocent, that does not give the officer who has specific articulable facts that crime may be afoot. Almost every case involving reasonable suspicion is going to have the potential for innocent explanations. In fact, a lot of times the content was, in fact, innocent. But that doesn't mean that, like here, they claim that the driver had her seatbelt on when the officer finally walks up to the car after the stop. The driver might have put it on sometime, and the officer somehow didn't see it because he's, like, behind the car and it's at night. But even then, even if the officer was wrong, it's not the officer that has to be right. They have to be reasonable. And here it was reasonable because the driver walking back was leaning forward as she was making her turn. This is out of the Huck's lot, onto the street. Right on the opposite side of the street, the officer, one officer's parked away, sees her in the mirror. But we also have another officer at the exact same time parking facing the street and sees the exact same thing. They talk to each other. They both saw it. Then they go out after the vehicle. And so it's not 100 yards away like the defendant says. The 100 yards was the whole distance of Huck's lot. Now, the moment that they see the seatbelt issue is when she's pulling onto the street. And they're right on the other side of the street. And the reference is that this was essentially almost one and a half lanes apart. And it's a lit street. There's streetlights. It's in a town. And so even though it's at night, there's enough light. The officers saw this. And it's something where they should have. There's no six-amendment requirement for the defense attorney to have raised this suppression issue. And also, even if this court agreed that there would be a reasonable probability of a suppression could have been granted, that doesn't mean that this court should reverse outright order suppression because this is being raised on ineffective assistance grounds, the basis for the stop issue. So it only requires a reasonable probability that suppression would have been granted, so it would be premature without giving the state an opportunity to even litigate the question, and no record really having been made of this question, to then outright reverse the case and suppress the evidence. That would be very premature. And so this court could, if there was ineffective assistance, retain jurisdiction, demand for a suppression hearing where both parties would have the opportunity to litigate the issue. And also, the standard is very limited. The standard is reasonable suspicion. And while most traffic stops are made on the basis of probable cause, they're not required to be based on probable cause, merely reasonable suspicion. So the officer only had to have a reasonable suspicion that there was a seatbelt violation to go after the vehicle and stop it. And so for those reasons, I would request you to definitely dismiss the appeal, but barring that, to affirm the judgment, except for I think we conceded the cannabis violation and credit on fines. Thank you, Your Honors. Thank you. Counsel? Your Honors, the state argues that the officer only needed reasonable suspicion to go after, to initiate the stop in this case. However, given the facts, the deuce of the motion to suppress hearing, it was objectively unreasonable for Deputy Sager to observe the seatbelt violation. For starters, when Deputy Sager approached Ms. Wachenbach, she was wearing her seatbelt. There's no evidence that Deputy Sager saw her put her seatbelt on while he was following her. Moreover, this observation is made while Deputy Sager is facing the opposite direction from Ms. Wachenbach, and he's made this observation through his rear-view mirror. It's objectively unreasonable, given those facts, that the seatbelt... Now hold on, there was another officer that was facing directly at him in their testimony. They discussed, they both asked each other, she didn't have her seatbelt on, right? No, she didn't. And then they went. That's true, Your Honor. Deputy Sager did confirm his observation with Sgt. Burley. However, that is an important fact, because if Sgt. Burley was the one who had a clear vision, a view of Ms. Wachenbach and the driver, it makes more sense that Sgt. Burley would have observed the seatbelt violation, and not Deputy Sager when he was looking through his rear-view mirror. I'd like to return to jurisdiction for a moment, because we did offer this Court a couple different ways in which it can have jurisdiction in this case. There are alternative arguments. First, we argue that the circuit court didn't have authority to strike Ms. Roosevelt's notice of appeal, because Rule 606B only authorizes a trial court to dismiss appeal when the notice of appeal is filed before the order disposing of all pending post-judgment motions is entered. In this case, the trial court entered an order disposing of all the post-judgment motions. It was an oral order. It was not a written order, but the rule does not specify which is required. It was an order nonetheless. So our first position is that the circuit court did not have jurisdiction to strike that notice of appeal in the first place, because it had already ruled on that post-judgment motion. Alternatively, we argue that the circuit court did have authority to fix its erroneous dismissal of Ms. Roosevelt's first notice of appeal. When it struck the first notice of appeal, it then attempted to fix its mistake by re-ruling on the post-judgment motion. The re-ruling on the post-judgment motion occurred on November 17, 2015. Ms. Roosevelt then timely filed a notice of appeal within 30 days from that on December 15, 2015. Thus, pursuant to the second order on Ms. Roosevelt's post-judgment motion, this court does retain jurisdiction. And to answer Your Honor's question earlier about the Illinois Supreme Court rule, it's Illinois Supreme Court Rule 383 that allows the Illinois Supreme Court to give this court authority to hear Ms. Roosevelt, the merits of Ms. Roosevelt's appeal. And if Ms. Roosevelt learns that this court finds it does not have jurisdiction, she will proceed that way, given that she cannot file a post-conviction petition at this time. Thank you. Thank you. Thank you. The court will take that on their advisement and issue its reluminy first. We have one last case on the docket that is a non-oral. And so the court stands adjourned.